UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

CYNTHIA RAMOS, *individually and as Parent and
Natural Guardian of W.R.*

                       Plaintiff,

             -v-

KAMAR H. SAMUELS, et al.,

                  Defendants.

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/28/2026

26-cv-3128 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Cynthia Ramos ("Plaintiff") moves for reconsideration of the Court's April 21, 2026 order denying her motion for a temporary restraining order ("TRO"). Dkt. No. 22. For the following reasons, Plaintiff's motion is denied.

## PROCEDURAL BACKGROUND

Familiarity with this proceeding is presumed. Plaintiff initiated this suit by complaint on April 16, 2026. Dkt. No. 1. The same day, she submitted an emergency motion for a temporary restraining order ("TRO"). Dkt. No. 4. In that motion, she sought enforcement of an Order on Pendency issued by Impartial Hearing Officer ("IHO") Patricia Le Goff on September 29, 2025, which directed that the New York City Department of Education ("DOE") fund her child W.R.'s pendency placement at the private school at which the student is enrolled, iBRAIN. Dkt. No. 1 ¶ 1. Plaintiff alleges that despite the Pendency Order, DOE has not paid the $950,705.00 for tuition and services related to that school, including transportation fees and 1:1 nursing services. *Id.* ¶ 3.

On April 21, 2026, the Court denied the motion for a TRO on the basis that Plaintiff failed to establish irreparable harm. Dkt. No. 18; *see Ramos v. Samuels*, 2026 WL 1078046

(S.D.N.Y. Apr. 21, 2026).  On April 27, 2026, the Court clarified that Plaintiff was "entitled to move for a preliminary injunction at the time of its choosing," Dkt. No. 20 at 2, and further that Defendant was "entitled to expedited discovery in connection with any such motion," *id.*  The Court concluded that the parties were to "meet and confer upon a schedule for the briefing of a preliminary injunction that permits Plaintiff to move for such relief when it is ready and also accounts for discovery deadlines" in *Mendez v. Aviles-Ramos*, Dkt. No. 25-cv-5746 (S.D.N.Y. Filed July 11, 2025), in which discovery on the same issue as it pertains to a different student at iBRAIN is proceeding concurrently.  *Id.* at 4.  The parties submitted a joint letter on May 4, 2026, in which Plaintiff noted that "she intends to move for reconsideration" of the Court's Order denying the motion for a TRO, and that she would submit briefing on a preliminary injunction only "pursuant to the Court's order."  Dkt. No. 21.  Plaintiff moved for reconsideration of the Court's order denying a TRO on May 5, 2026.  Dkt. No. 22.

## LEGAL STANDARD

"A motion for reconsideration should be granted only if the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1 (S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).  "The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court.'"  *Justice v. City of New York*, 2015 WL 4523154, at *1 (E.D.N.Y. July 27, 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of

scarce judicial resources." *In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted).  It is not a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

**DISCUSSION**

**I.    Request for Reconsideration of Order Denying TRO**

Plaintiff seeks reconsideration of the Court's denial of her request for a TRO on the basis that the Court "overlooked 'controlling decisions or data' that might reasonably have altered the result, where correction is necessary to prevent clear error or manifest injustice or where newly available facts materially change the posture of an interlocutory order."  Dkt. No. 23 at 3 (quoting *Schrader*, 70 F.3d at 257).  Rather than point to any new authority or legal development since the Court's prior order, Plaintiff reiterates the argument she made in her request for a TRO that an IDEA plaintiff is automatically entitled to payment of private placement tuition during the "pendency of any proceedings conducted pursuant to this section," such that they are not required to independently show irreparable harm in seeking temporary injunctive relief.  *Id.*

Briefly, and with reference to the Court's prior decision, the IDEA contains a "stay-put" or "pendency" provision that entitles children to "remain in [their] then-current educational placement" at public expense "during the pendency of any proceedings."  20 U.S.C. § 1415(j).  That statute is designed to ensure that the school district "continue[s] funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete."  *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).  The Second Circuit has held that although DOE is obligated to fund placements "for the duration of the proceedings," "[t]he IDEA's stay-put provision does not create an entitlement to

immediate payment or reimbursement." *Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023). "Parents or guardians may still be able to obtain such relief if they establish that a delay or failure to pay has jeopardized their child's educational placement.  But absent such a showing, DOE is not obliged to circumvent its ordinary payment procedures." *Id.*[1]

In its motion for reconsideration, as in its motion for temporary injunctive relief, Plaintiff conflates the statutory command in 20 U.S.C. § 1415(j) with their desire for *immediate* payment to support that pendency from the DOE in the form of preliminary injunctive relief.  It is not disputed that "DOE is obligated to fund" a child's "educational placements during the duration of their proceedings," but the key distinction that Plaintiff omits is that the obligation "does not mean that § 1415(j) requires the DOE to automatically fast-track funding for the educational placements." *Mendez*, 65 F.4th at 63 (2d Cir. 2023); *see also Abrams v. Porter*, 2021 WL 5829762, at *1 (2d Cir. Dec. 9, 2021) (summary order).  "Nothing in the text of § 1415(j) goes that far." *Mendez*, 65 F.4th at 63.  "As a practical matter, it makes sense that it is the party generally responsible for paying a student's agreed-upon educational program" to "determine[] how the pendency services are to be provided" because "(i) public funding for pendency services can never be recouped; and (ii) the cost of educational services in schools can vary dramatically." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 535 (2d Cir. 2020).

The Court in *Mendez* further explained that:

> Our determination that the statute does not require circumvention of ordinary payment procedures here comports with the practical realities of bureaucratic administration.  The DOE receives thousands of funding requests under the IDEA at the start of each school year and spends hundreds of millions of dollars annually to fund placements. *See* N.Y.C. Indep. Budget Off., "Carter Case" Spending for Students with Special Needs Continues to Grow Rapidly 2 (2021),

---

[1] The DOE does not contest that if "the case is resolved and it's determined that pendency was proper at iBRAIN," that it will "fund through the school year . . . [p]ursuant to that pendency." Dkt. No. 24 at 15:12–16.

https://ibo.nyc.ny.us/iboreports/carter-case-spending-for-students-with-special-needs-continues-to-grow-rapidly-march-2021.pdf. Any agency will need some amount of time to process and pay submitted invoices. If each pendency order entitled parents or guardians to immediate payment, school districts would be unable to implement basic budgetary oversight measures, such as requiring receipts before reimbursement. And "[n]othing in the statutory text or the legislative history of the IDEA . . . implies a legislative intent to permit [parents or guardians] to utilize the stay-put provision's automatic injunctive procedure to frustrate the fiscal policies of participating states." *Ventura de Paulino*, 959 F.3d at 535 (citation omitted).

65 F.4th at 63.

Accordingly, other courts in this District that have recently confronted similar requests for relief (brought by the same law firm on behalf of students attending the same private school) have unanimously affirmed that non-payment of pendency, absent a showing that the child's placement is jeopardized, does not entitle that plaintiff to an injunction mandating payment. *See Mendez v. Aviles-Ramos*, 2025 WL 3033725, at *1 (S.D.N.Y. Oct. 30, 2025) ("Following the Circuit's ruling, this court has already made it abundantly clear that the stay-put provision operates as 'an automatic preliminary injunction' only insofar as it protects the child's right to remain in his or her then-current educational placement and ensures funding necessary to maintain that placement; it does not create an entitlement to immediate payment unless the parents establish that a delay or failure to pay jeopardizes their child's educational placement."); *Nicholls v. Aviles-Ramos*, 2026 WL 699791, at *4 (S.D.N.Y. Mar. 12, 2026) (collecting cases).

The Second Circuit has more recently addressed the very questions presented by the Plaintiff here. In a case brought by Liberty & Freedom Legal Group on behalf of parents of children attending iBRAIN, the Court of Appeals affirmed a district court decision that dismissed the plaintiffs' amended complaints and denied their motions for preliminary injunctions seeking, among other things, expedited pendency payments from DOE. *See Ramos v. Samuels*, 2026 WL 1346852, at *1–4 (2d Cir. May 14, 2026), *aff'g Ramos v. Banks*, 2025 WL 1455703 (S.D.N.Y.

5

May 21, 2025).  Faced with an argument from the plaintiff that they were entitled to injunctive relief ordering immediate payment during pendency, the Second Circuit stated that "[t]o repeat our holding in *Mendez*, 'the IDEA's stay-put provision does not create an entitlement to immediate payment or reimbursement," and that, absent a showing that delay or nonpayment has jeopardized the child's placement, "the DOE is not obliged to circumvent its ordinary payment procedures."  *Id.* at *3 (quoting *Mendez*, 65 F.4th at 63).  In *Ramos*, the Circuit ultimately held that the plaintiffs' claims were moot because "the school year is now over."  *Id.*[2]  The Court's decision in *Ramos* is consistent with this Court's holding that, in the absence of evidence that DOE's failure to pay would jeopardize W.R.'s educational placement or that an order requiring DOE to pay would protect W.R.'s educational placement, Plaintiff is not entitled to injunctive relief.

Plaintiff also appears to argue that evidence that has come to light after the Court's Order necessitates a re-evaluation of the Court's prior denial of the TRO.  That is, Plaintiff argues that there is now strong evidence that the non-payment of the plaintiff's pendency is jeopardizing the student's placement at iBRAIN.  *See* Dkt. No. 23 at 5.  That argument fails for several reasons.

---

[2] Plaintiff repeatedly cites to a portion of a footnote in the Supreme Court's decision in *Honig v. Doe* which reads that "we do not believe that school officials can escape the presumptive effect of the stay-put provision simply by violating it and forcing parents to petition for relief."  484 U.S. 305, 328 n.10 (1988).  That citation is inapposite.  In *Honig*, the Supreme Court addressed a dispute that grew out of "efforts" of officials in a school district "to expel two emotionally disturbed children from school indefinitely for violent and disruptive conduct related to their disabilities."  *Id.* at 312.  The children's parents then brought an action against those officials seeking injunctive relief, which the district court granted, ordering the defendants to "return Doe to his then current educational placement."  *Id.* at 314.  The district court, and the Ninth Circuit, determined that the "indefinite suspension in aid of expulsion constitutes a prohibited 'change in placement' under § 1415(e)(3)."  *Id.* at 316.  Thus, the Court did not purport to opine that withholding payment throughout the appeal of a placement decision was a violation of the stay-put provision that overcomes any normal irreparable harm framework; it stands for the much more limited, common-sense principle that in some contexts forcefully removing a child from their school violates the stay-put provision of the IDEA.

First, "new evidence" that merits reconsideration is that which is "truly newly discovered or could not have been found by due diligence." *Lashify, Inc. v. Qingdao Network Tech. Co.*, 2026 WL 112022, at *7 (S.D.N.Y. Jan. 15, 2026) (quoting *Ayala v. Saw Mill Lofts, LLC*, 2023 WL 5835585, at *3 (S.D.N.Y. Aug. 16, 2023)). "A motion to reconsider is not [an] opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 396 (S.D.N.Y. 2016). Evidence known to the movant "but supplied to the Court for the first time on reconsideration . . . cannot constitute 'new evidence.'" *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 1088020, at *2 (S.D.N.Y. Feb. 12, 2018). In her motion for reconsideration, Plaintiff points to an exhibit attached to the parties' joint letter, which is an April 22, 2026 communication from the DOE to Plaintiff noting its awareness that iBRAIN "is closed indefinitely," and providing an alternative placement offer "for a DOE specialized public school." Dkt. No. 19-1. The Court specifically asked counsel at the hearing for a TRO whether iBRAIN would remain closed, but counsel "could not proffer whether it would remain closed on April 21 or beyond." *Ramos*, 2026 WL 1078046, at *2. Plaintiff cannot remedy her own failure to provide the Court with the kind of evidence necessary to establish irreparable harm at the time she sought a TRO with a single statement in an email from the DOE that it has since received.[3]

Second, even considering the DOE's statement in the exhibit that iBRAIN is closed "indefinitely," there is no occasion for the Court to reconsider its findings that Plaintiff has not established its entitlement to a TRO. That iBRAIN may be closed does not address the

---

[3] The continued relevance of that statement is further disputed by the party asserted to have made it. In its opposition to the motion for reconsideration, DOE states that on April 23, 2026, the day after the e-mail cited by Plaintiff, DOE received a communication from Plaintiff's counsel stating that the school had reopened. Dkt. No. 26 at 5.

independent basis upon which the Court found that Plaintiff had not established entitlement to a TRO, which is that "Counsel was not able to proffer that the school would open solely for one student" even if Plaintiff's pendency was paid. *Id.* at *3. Thus, "the vague provision of some individual services to W.R. would not remedy the alleged irreparable harm Plaintiff has identified—the denial of a free appropriate public education." *Id.*; *see also Juca v. Aviles-Ramos*, 2026 WL 1180370, at *1 (S.D.N.Y. Apr. 30, 2026) ("Plaintiffs have not shown redressability based on the current record, as there is no indication that granting the requested relief as to the Plaintiffs in this case would cause the school to resume operations."). Moreover, Plaintiff has *still* provided no evidence that iBRAIN remains closed.

## II.      Request for Reconsideration of Order Permitting Limited Discovery

Plaintiff also argues that the Court should reconsider its order that Defendant is entitled to limited discovery because "[p]endency preserves the status quo while disputes proceed; it is not a discovery-conditioned merits injunction." Dkt. No. 23 at 6. The Court did not order any discovery, and noted only that, if Plaintiff were to move for a preliminary injunction, Defendant would be entitled to limited discovery in connection with that motion. Dkt. No. 20 at 2. The Court declines to reconsider that order. As the Court explained, this is a case in which discovery "would better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Id.* at 3 (quoting *Celine S.A. v. Hongkong CSSBUY E-Com. Co., Ltd.*, 2024 WL 4627666, at *7 (S.D.N.Y. Oct. 30, 2024)).

### CONCLUSION

Plaintiff's motion for reconsideration is DENIED.

The Court will hold an initial pretrial conference in this proceeding on June 29, 2026, at 3:00 p.m. The parties are instructed to dial 646-453-4442, and input access code 358639322,

8

and are further reminded of the obligation to submit a case management plan one week in advance of the conference.

The Clerk of Court is respectfully directed to close Dkt. No. 22.

SO ORDERED.

Dated: May 28, 2026
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

9